PARKER, Justice.[1]
In an action arising out of defaults on promissory notes, AmeriSource Corporation appeals from the Calhoun Circuit Court’s denial of its motion to alter, amend, or vacate a judgment entered in its favor insofar as that judgment excluded any amounts for prejudgment and post- *297 judgment interest. AmeriSource argues that the trial court erred in not following the recommendations of the special master to whom the case was assigned; those recommendations, it argues, include the award of prejudgment and postjudgment interest.

I. History

CRSX, Inc., d/b/a Blue Mountain Drugs, and Calhoun Pharmacy Services, Inc., d/b/a Golden Springs Pharmacy (hereinafter referred to collectively as “the pharmacies”), entered into separate sales agreements with AmeriSource in February 1997 for the purchase of pharmaceuticals and related items to be supplied by Ameri-Source. In addition, they executed separate promissory notes to secure payment for the pharmaceuticals and related items. They subsequently defaulted on the agreements, and on September 22, 2000, Ameri-Source filed a complaint in the Calhoun Circuit Court demanding judgment in an amount just under $733,000, plus attorney fees and court costs.
The trial court, on motion of the pharmacies, appointed a special master, J. Barry Tidwell, to prepare an accounting of the activities conducted under the sales agreements and to submit a report stating what amounts, if any, were owed and to whom they were owed. Tidwell’s report, dated December 18, 2001, found that the pharmacies owed AmeriSource a total of $451,147. The report referred to “a reasonable estimate” of possible interest through October 1, 2000, of $117,041 from Golden Springs and $59,048 from Blue Mountain, but Tidwell also stated that “[t]his report does not include a calculation of finance (interest) charges, which may or may not be owed by the [pharmacies] to [AmeriSource].”
Neither side filed any objection to the report, and on August 27, 2003, the trial court entered an order granting Ameri-Source a judgment in the amount of $451,147. The order specifically provided: “Plaintiff will not be entitled to interest on the amount of its judgment.” Ameri-Source submitted a motion to alter, amend, or vacate the judgment, asking the trial court to adopt the findings of the special master regarding interest and requesting that it impose prejudgment and post-judgment interest. The trial court denied the motion, and AmeriSource appealed.
AmeriSource asserts that the trial court held no hearing on the special master’s report and that it thereby erred in disregarding the part of the findings in the special master’s report that included a means for. assessing possible interest owed by the pharmacies. The pharmacies assert that a hearing was indeed held, although not specifically on the special master’s report, and they deny that any interest is due on the amount awarded by the judgment.

II. Legal Analysis

A. Requirement of a Hearing on the Special Master’s Report
Rule 53, Ala. R. Civ. P., provides that a court may appoint a special master. Rule 53(e)(2), which governs the use of a master’s report in a nonjury action such as this one, provides:
“In an action to be tried without a jury the court shall accept the master’s findings of fact unless clearly erroneous. Within ten (10) days after being served with notice of the filing of the report any party shall serve any written objections thereto upon the other parties. Applications to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The Court after hearing may adopt the report or may modify it or may reject it in whole or in *298 part or may receive further evidence or may recommit it with instructions.”
(Emphasis added.) Rule 53(e)(2) gives the trial court discretion over its use of a special master’s recommendation and provides that the court must hold a hearing if a party files written objection by motion to the special master’s findings within 10 days of service of notice of the filing of the report. Thus, the hearing requirement is triggered by a timely objection.
In this case, the trial court did hold a hearing regarding the special master’s report before issuing its ruling in the case. However, the hearing was limited to evaluating the reasonableness of the fee charged by the special master and did not address the substance of the special master’s report. Furthermore, no party filed “an application to the court for action on the report.” Nevertheless, the trial court’s final order showed it did take the special master’s report into account.
In Johnson v. Willis, 893 So.2d 1138, 1141-42 (Ala.2004), a dispute between a mayor and the city council over the authority of each, the trial court failed to hold a hearing before it adopted the special master’s report recommending that a preliminary injunction be entered against the city council. In that case, this Court reversed the trial court’s order because the trial court did not hold a proper hearing. If the instant case were directly analogous, we would likewise reverse the trial court’s judgment. However, the two cases are easily distinguished.
In Willis, the city council filed a motion objecting to the special master’s report, as prescribed by Rule 53(e)(2), Ala. R. Civ. P. In the instant case, however, no party objected to the special master’s report as permitted under the rule. Furthermore, no hearing was held in Willis, whereas in the instant case a hearing, however limited, was held. Because no party in the instant case objected to the special master’s report or to the failure to cover the substance of the special master’s report at the hearing, the trial court did not violate the parties’ due-process rights when it took the special master’s report into consideration in issuing its ruling.
B. Prejudgment Interest
In the order appointing the special master in this case, the trial court assigned Tidwell, the special master, the task of determining, among other things, “what interest rate [AmeriSource] has charged [the pharmacies] on any outstanding balance due on [the pharmacies’] accounts from June 1, 1998, through October 1, 2000.” The trial court also asked Tidwell for “documentation and breakdown into categories of how [AmeriSource] charges penalties, fees and late charges to [the pharmacies’] accounts from June 1, 1998 through October 1, 2000.” The order appointing the special master did not, however, instruct Tidwell to determine the amount of interest, if any, on any amount found to be owed to AmeriSource by the pharmacies.
In keeping with the trial court’s instructions, Tidwell’s report did include a finding of the balance due on the pharmacies’ accounts through October 1, 2000, but it did not make a specific finding of the interest owed:
“In our expert opinion as Special Master of the Court, the balance owed by the Defendants, Golden Springs Pharmacy and Blue Mountain Drugs[,] to [Ameri-Source] as of October 1, 2000 is $451,147. This amount does not include any finance (interest) charges that may be owed by the [pharmacies]. Interest computed on the Average Outstanding Balance through October 1, 2000, at 1.5% per month (18% per year), is *299 $117,042 and $59,048 for Golden Springs and Blue Mountain respectively.”
(Emphasis added.) Furthermore, Tidwell did summarize the various penalties and fees that could have applied, while noting that the billing and finance charges imposed by AmeriSource had been irregular:
“[The pharmacies] signed a credit application for the Blue Mountain store on September 13, 1995 agreeing to a service charge of 1% per month (12% per year) on any late payments.... We tested the finance charge on the Blue Mountain August 15, 1998 statement. The interest charge very closely approximates ... 12% per year. We tested the service charges ... on the December 15 and 31, 1998 statements and found the interest rate to ... equal 3% per month or 36% per year.... The billing and finance charges by [AmeriSource] seem to have been very irregular.”
But Tidwell stressed that his summary in his report of the various fees and penalties did not include a specific determination of what interest was owed; rather, his report outlined an approach to calculating the interest that would yield a “reasonable estimate of finance charges”:
“This report does not include a calculation of finance (interest) charges, which may or may not be owed by the [pharmacies] to [AmeriSource]. However, provided as a supplementary schedule (see Exhibit 6) to this report, is a calculation of finance charges that could be used as a reasonable estimate of finance charges based on average outstanding balances during the period in question for the [pharmacies].”
The proper understanding of the special master’s report is that the sentence that determines that the pharmacies owed Am-eriSource $451,147 as of October 1, 2000, represents a finding of fact for the purposes of Rule 53(e)(2), whereas the sentence that refers to finance or interest charges that “may or may not be owed” is not a finding of fact. The trial court, in its August 27, 2003, order, evidences a recognition of the difference between the two portions of the report:
“On December 18, 2001, the Special Master issued his report. In that report he found that the balance owed to [Am-eriSource] by [the pharmacies] was $451,147.00. In his observations about the records of [AmeriSource], the Special Master found that [AmeriSource] charged interest on some occasions and did not charge at all on others. In section 4 of his report Work Performed and Observations,’ the Special Master stated that ‘the billing of finance charges by [AmeriSource] appears to have been very irregular.’ ”
The trial court went on to say:
“It is the opinion of the Court that the Special Master was unable to find sufficient documentation to assess interest against the [pharmacies].
“It is hereby ORDERED, ADJUDGED and DECREED as follows:
[[Image here]]
“3. [AmeriSource] will not be entitled to interest on the amount of its Judgement.”
Perhaps because the special master’s report did not include a definitive finding of interest owed, AmeriSource relies on a letter from Tidwell to the trial judge dated January 4, 2002, sent after he issued the special master’s report dated December 18, 2001, as the basis for asserting that it is owed a total of $627,236 (judgment amount of $451,147 plus interest amounts of $117,041 and $59,048), rather than $451,147. AmeriSource’s brief at 11.
AmeriSource’s assertion is not persuasive. Before a court can award prejudgment interest, the amount must be *300 calculable. A “trial court [does] not err in failing to award interest” when “the trial court [has] no evidence before it on which it could calculate the amount of interest due.” Hackworth v. Hackworth, 736 So.2d 1116, 1117 (Ala.Civ.App.1999) (abrogated on different grounds, T.L.D. v. C.G., 849 So.2d 200, 204 (Ala.Civ.App.2002)).
In the instant case, the special master’s report did not present clear evidence of the interest that was due; it merely provided suggested figures based on an assumed 18% interest rate that was not supported in practice by the transactions on record between AmeriSource and the pharmacies. Therefore, given the record in this case, the trial court did not err by disallowing prejudgment interest.
C. Postjudgment Interest
AmeriSource seeks postjudgment interest at the statutory rate of 12% per annum from the date of the entry of the judgment. § 8-8-10, Ala.Code 1975. Am-eriSource’s brief at 15. AmeriSource properly raised this issue before the trial court in its motion to alter, amend, or vacate. However, while the special master was conducting his investigation and before the trial court entered the order awarding AmeriSource a judgment amount of $451,147, AmeriSource had received $451,147 in payments from the pharmacies. Therefore, at the time the judgment was entered, there was no balance remaining that would make postjudgment interest applicable. Accordingly, we affirm the trial court’s judgment insofar as it declines to award postjudgment interest.

III. Conclusion

Because no party in the instant case objected to the special master’s report or to the trial court’s failure to address the substance of that report in the hearing, the trial court did not violate the due-process rights of the parties when it took the special master’s report into consideration in issuing its order. Furthermore, the trial court acted within its discretion in declining to award prejudgment and post-judgment interest. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.

. This case was originally assigned, to another Justice on this Court; it was reassigned to Justice Parker.